IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling Division

SCOTT SONDA and BRIAN CORWIN,

    Plaintiffs,

v.                                         Civil Action No. 5:22-cv-124

JAMES C. JUSTICE, II, GOVERNOR
OF THE STATE OF WEST VIRGINIA,

    Defendant.

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

In their suit against Governor James C. Justice, II, (the "Governor"), Plaintiffs seek to enjoin an allegedly unconstitutional state law. The Governor, however, must be dismissed based on a single indisputable fact: he is neither charged with administering that state law, nor empowered to enforce its provisions. And absent enforcement authority, Plaintiffs' claims run into two jurisdictional impediments: the Eleventh Amendment, which generally affords immunity to state officers, and Article III standing, which requires, among other things, that enforcement of the law and the resulting harm be fairly traceable to the defendant. That the Governor has *general authority* to enforce the laws of the State is insufficient to clear these jurisdictional barriers. For these reasons, the Governor is not a proper party to this constitutional challenge and should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

## **O**PERATIVE **F**ACTS

Plaintiffs challenge as unconstitutional Senate Bill 694, which adds and amends various sections of Article 9, Chapter 22C, all relating generally to oil and gas development.[1] Relevant here, SB694 creates a new mechanism by which the Oil and Gas Conservation Commission (the "Commission") may unitize two or more mineral tracts for horizontal drilling and production. Plaintiffs' challenge this mechanism insofar as SB694 permits, under limited circumstances, compulsory unitization of non-consenting mineral owners.

### *The Commission*

The Commission is "empowered and it is the commission's duty to execute and carry out, administer and enforce the provisions of this article [Article 9, Chapter 22C]," which is the subject of Plaintiffs' constitutional challenge. *See* W. Va. Code § 22C-9-4(e). Among other responsibilities, the Commission is charged with regulating the spacing of oil and gas wells; issuing new well permits and horizontal well unit orders; and proposing and enforcing legislative rules to prevent waste and protect the correlative rights of operators, surface owners, and mineral owners. *See* W. Va. Code § 22C-9-4(f). Notably, the Commission's authority to "establish drilling units" and to "[a]pprove or deny an application for the pooling of interests within a drilling unit" is non-delegable. W. Va. Code § 22C-9-4(h). The Commission is made up of seven

---

[1] The engrossed version of SB694, which includes tracked changes to existing law, can be accessed at:
https://www.wvlegislature.gov/Bill_Text_HTML/2022_SESSIONS/RS/bills/SB694%20SUB1%20eng.pdf

2

members. *See* W. Va. Code § 22C-9-4 (providing general qualifications and terms). The Director of the Department of Environmental Protection ("DEP") and the Chief of the DEP's Office of Oil and Gas are members of the Commission ex officio. The remaining members of the Commission are appointed by the Governor, with the advice and consent of the Senate. The members serve for defined terms and may only be removed for "incompetency, neglect of duty, gross immorality or malfeasance in office." W. Va. Code § 22C-9-4.

*Summary of SB694 and the Broader Statutory Scheme*

Unitization refers to the pooling of separately owned mineral tracts in order to form a single operating unit overlaying all, or part of, a common source of oil and gas supply (e.g., a reservoir). Once a horizontal well unit has been created, an operator may develop the reservoir within the bounds of the unit but without regard to property lines of the pooled mineral tracts. A lessor that is a mineral tract owner, in such circumstances, would be entitled to a royalty based on a pro rata share of the production attributable to her mineral tract, regardless of whether production is from her mineral tract or another tract within the unit. In general, unitization promotes the efficient production of a reservoir, maximizes the economic recovery for both operators and mineral owners, and reduces the footprint from surface operations.

Often, unitization is done voluntarily. That is, mineral owners agree to the benefits of the combined acreage and consent to an operator pooling and unitizing the acreage covered by their lease. At times, however, mineral owners may refuse to lease their mineral rights within a proposed unit. Or, in cases where the mineral

rights are already leased, withhold consent for pooling and unitization. For example, under preexisting law, the owner of a 1-acre mineral tract could thwart development of a 640-acre unit notwithstanding consent from the owners of the remaining 639 mineral acres. In response, many producing states, including West Virginia, have enacted statutory or compulsory unitization laws, which allow under limited circumstances, the pooling and unitization of various non-consenting mineral interests.

Under SB694, an operator may apply to the Commission to establish a drilling unit and to pool the mineral interests within the proposed unit. W. Va. Code § 22C-9-7a(c)(1). Before filing an application, the applicant must satisfy three conditions: First, as to the royalty interest, the applicant must obtain consent to pool or unitize from certain royalty owners representing 75% or more of the net acreage proposed for the horizontal well unit. W. Va. Code § 22C-9-7a(c)(2)(A). Second, as to the operator interest, the applicant must obtain the right to develop the acreage from those royalty owners representing 55% or more of the net acreage for the horizontal well unit. W. Va. Code § 22C-9-7a(c)(2)(B). Third, as to each non-consenting royalty owner that is known and locatable, the operator must have made "good faith offers" to consent or agree to development of the acreage and participation in the proposed horizontal well unit. W. Va. Code § 22C-9-7a(c)(2)(C).

In executing its powers, the Commission determines what constitutes a good faith offer and is otherwise charged with ensuring that the applicant has met the statutory requirements for seeking a horizontal well unit order. *See* W. Va. Code §

22C-9-7a(e). Before issuing a horizontal well unit order, the Commission must hold a hearing and provide notice of that hearing to all interested parties. W. Va. Code § 22C-9-7a(d)(2). At the hearing, objections to the unitization application will be heard. *See id*. If the operator meets all of the statutory requirements, the Commission must issue a horizontal well unit order, authorizing unitization of the tracts and the corresponding oil and gas interests proposed to be unitized for horizontal drilling. W. Va. Code § 22C-9-7a(c)(5).

Non-consenting mineral owners are not without compensation. Where there is a valid lease but no pooling and unitization provisions in that lease, the non-consenting royalty owner is entitled to a statutorily-defined bonus and production royalty. W. Va. Code § 22C-9-7a(f)(6). Conversely, where there is no lease at all, the non-consenting mineral owners may elect one of three options: (i) surrender the oil and gas underlying the tract to the operator for a statutorily-defined amount; (ii) accept unitization consideration, which essentially creates a lease with terms similar to those of other leases in the unit; or (iii) participate in the unit on a carried basis. W. Va. Code § 22C-9-7a(f)(7). For those non-consenting mineral owners who fail to make an election shall, they shall be deemed to have elected the second option. *Id*.

SB694 became effective June 7, 2022. Compl. ¶ 24.

*Plaintiffs' Claims*

In Counts I through III, Plaintiffs complain that SB694 violates the U.S. Constitution and the West Virginia Constitution—in particular, the Takings Clauses and the Due Process Clauses—by depriving non-consenting mineral owners in a given

5

unit of their property without just compensation and without due process. Compl. ¶¶ 25-53. In Count IV, Plaintiffs complain that SB694 violates Article I, Section 9 of the U.S. Constitution and Article 3, Section 4 of the West Virginia Constitution insofar as it is ex post facto law. *Id*. at ¶¶ 54-65. In Count V, Plaintiffs complain that SB694 runs afoul of federal antitrust laws. *Id*. at ¶¶ 66-80.

Among other things, Plaintiffs ask that SB694 be declared unconstitutional, and that the Governor be preliminarily and permanently enjoined from enforcing SB694. *Id*. at p.20.

## ARGUMENT

The Governor must be dismissed because (A) the Eleventh Amendment affords him complete immunity and (B) Plaintiffs are without standing to prosecute their claims against the Governor. Each argument is addressed in turn.

### A. Eleventh Amendment Immunity

In general, states may not be haled into federal court without their consent. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (providing that the Eleventh Amendment generally shields states from lawsuits brought by individuals against the state without its consent). A state official sued in his official capacity enjoys the same sovereign immunity accorded to the state. *Doyle v. Hogan*, 1 F.4th 249, 254 (4th Cir. 2021) ("the officer is merely a representative of the State who cannot be sued because allowing such a suit would essentially make the State a party") (cleaned up). Eleventh Amendment immunity, however, is not absolute.

Under the so-called *Ex parte Young* exception, federal courts may issue prospective, injunctive relief against state officers to prevent ongoing violations of federal law. *See McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex parte Young*, 209 U.S. 123, 149-50 (1908)). That said, *Ex parte Young* only authorizes suits against state officers with "some connection with the enforcement of the act." *Doyle*, 1 F.4th at 254. As the Court of Appeals for the Fourth Circuit put it, "the officer sued must be able to enforce, if he so chooses, the specific law the plaintiff challenges." *Id.* at 255. This requirement limits plaintiffs to suing only those officers with the legal ability to remedy the alleged constitutional violation. *Goldman v. Northam*, 566 F. Supp. 3d 490, 504 (E.D. Va. 2021). Without specific authority to enforce the challenged law, the state officer is cloaked with Eleventh Amendment immunity. *See id.* Relevant here, a governor's *general authority* to enforce state law is insufficient. *See Doyle*, 1 F.4th at 255 (providing that a governor's constitutional authority to generally enforce state law is insufficient to overcome Eleventh Amendment immunity); *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) (same); *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022) (same, albeit through prism of Article III standing analysis).

Plaintiff has failed to identify any provision of SB694—or the broader statutory scheme—that confers upon the Governor any enforcement authority. Indeed, the Complaint identifies only a general duty to "take care that the laws be faithfully executed." Compl. ¶ 13 (citing W. Va. Const. art. VII, § 5). But this was the exact type of general authority that the Fourth Circuit rejected as insufficient in *Waste*

7

*Management*, again in *Doyle,* and finally in *Disability Rights*. *Waste Mgmt.*, 252 F.3d at 331; *Doyle*, 1 F.4th at 255; *Disability Rts.*, 24 F.4th at 901. Because Plaintiffs have failed to identify a sufficient relation between the Governor and SB694—aside from his constitutional authority to enforce state law, generally—the Governor is entitled to Eleventh Amendment immunity. For this reason alone, the Governor must be dismissed.

### B. *Article III Standing*

Immunity notwithstanding, Plaintiffs lack standing to pursue their claims against the Governor. To establish Article III standing, Plaintiffs must plausibly allege that they have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 30, 338 (2016). Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing these elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Plaintiffs fail to satisfy either of these requirements.

*First,* Plaintiffs have failed to demonstrate injury-in-fact. To establish injury-in-fact, Plaintiffs must show that they suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (cleaned up). While "imminence is concededly a somewhat elastic concept," a "threatened injury must be certainly impending to constitute injury in fact," and "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up).

"An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up).

Plaintiffs have not identified any *actual* injury sustained as a result of SB694. Nor have Plaintiffs identified any *impending* injury sufficient to confer standing. Though Plaintiffs allege that they own various mineral tracts in the State, they do not allege that the provisions of SB694 have been enforced against them or that such enforcement is imminent. For example, Plaintiffs do not allege that the Commission has unitized their mineral tracts into a horizontal well unit—much less that an operator has applied to unitize their mineral tracts. All told, Plaintiffs appear to be totally unaffected by SB694. Absent allegations of a concrete and particularized injury—or, at a minimum, allegations of an impending injury or substantial risk of harm—Plaintiff's claims must be dismissed for lack of Article III standing.

*Second*, Plaintiffs have not plausibly alleged that their injury, if any, is fairly traceable to the Governor. To establish standing, "a plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Disability Rts.*, 24 F.4th at 901. "When a defendant has no role in enforcing the law at issue, it follows that the plaintiff's injury allegedly caused by that law is not traceable to the defendant." *Id*. For the same reason that the Governor is entitled to Eleventh Amendment immunity, Plaintiffs' supposed injuries are not fairly traceable to the Governor. *See id*. (providing that the *Ex parte Young* principles apply with equal force in the standing context).

9

*Third*, Plaintiffs have not demonstrated that their injury, if any, would be redressed by a favorable ruling against the Governor. Because he has no authority to enforce SB694, an order enjoining the Governor's enforcement of SB694 would serve no practical purpose. Plaintiffs' claims against the Governor must therefore be dismissed for lack of Article III standing.

## CONCLUSION

For these reasons, the Governor is not a proper party to this constitutional challenge and should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

**JAMES C. JUSTICE, II, GOVERNOR**

By Counsel:

/s/ Andrew C. Robey
Michael B. Hissam (WVSB #11526)
Andrew C. Robey (WVSB #12806)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
t: 681-265-3802
f: 304-982-8056
mhissam@hfdrlaw.com
arobey@hfdrlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling Division

SCOTT SONDA and
BRIAN CORWIN,

        Plaintiffs,

v.                                                         Civil Action No. 5:22-cv-124

JAMES C. JUSTICE, II,
GOVERNOR OF THE STATE
OF WEST VIRGINIA,

        Defendants.

**CERTIFICATE OF SERVICE**

      The undersigned counsel does hereby certify that on the 8th day of August, 2022, he electronically filed the *Memorandum in Support of Defendant's Motion to Dismiss* with the Clerk of Court using the CM/ECF system, which will send notification of that filing to counsel of record.

                                        /s/ *Andrew C. Robey*
                                        Andrew C. Robey (WVSB #12806)