IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling Division

SCOTT SONDA and BRIAN CORWIN,

    Plaintiffs,

v.                                                     Civil Action No. 5:22-cv-124

WEST VIRGINIA OIL & GAS
CONSERVATION COMMISSION, *et al.*

    Defendants.

## MEMORANDUM IN SUPPORT OF THE ATTORNEY GENERAL'S MOTION TO DISMISS

Plaintiffs' inclusion of Patrick Morrisey, in his official capacity as Attorney General of West Virginia (the "Attorney General"), as a defendant in this matter is barred by Eleventh Amendment immunity. The *Ex parte Young* exception does not apply because the Attorney General is not tasked with enforcing the various sections of the challenged law, found in Article 9, Chapter 22C of the West Virginia Code, which were enacted by Senate Bill 694, all relating generally to oil and gas development (the "Act"). The Attorney General is likewise not charged with a general duty to faithfully execute or enforce the laws of West Virginia. Consequently, the Attorney General plays no direct role in the enforcement of the Act. The Attorney General's inclusion in this matter does not—and any future permanent injunction against the Attorney General in this matter *would not*—provide Plaintiffs the relief sought in the Amended Complaint. *See* Am. Compl. [ECF No. 16, at 23–24]. As such, the Attorney General is entitled to Eleventh Amendment immunity because the *Ex*

*Parte Young* exception is not triggered. But even if this Court finds that it the Attorney General is not immune, Plaintiffs lack Article III standing to pursue their claims in any event.

For these reasons—which are the same reasons this Court previously dismissed the Governor [ECF No. 14]—the Attorney General is not a proper party and Plaintiffs lack standing regardless. The claims must be dismissed.

## OPERATIVE FACTS

Plaintiffs challenge as unconstitutional Senate Bill 694, which adds and amends various sections of Article 9, Chapter 22C, all relating generally to oil and gas development.[1] Relevant here, SB694 creates a new mechanism by which the Oil and Gas Conservation Commission (the "Commission") may unitize two or more mineral tracts for horizontal drilling and production. Plaintiffs' challenge this mechanism insofar as SB694 permits, under limited circumstances, compulsory unitization of non-consenting mineral owners.

### *The Commission*

The Commission is "empowered and it is the commission's duty to execute and carry out, administer and enforce the provisions of this article [Article 9, Chapter 22C]," which is the subject of Plaintiffs' constitutional challenge. *See* W. Va. Code § 22C-9-4(e). Among other responsibilities, the Commission is charged with regulating

---

[1] The engrossed version of SB694, which includes tracked changes to existing law, can be accessed at:
https://www.wvlegislature.gov/Bill_Text_HTML/2022_SESSIONS/RS/bills/SB694%20SUB1%20eng.pdf

the spacing of oil and gas wells; issuing horizontal well unit orders; and proposing and enforcing legislative rules to prevent waste and protect the correlative rights of operators, surface owners, and mineral owners. *See* W. Va. Code § 22C-9-4(f). Notably, the Commission's authority to "establish drilling units" and to "[a]pprove or deny an application for the pooling of interests within a drilling unit" is non-delegable. W. Va. Code § 22C-9-4(h). The Commission is made up of seven members. *See* W. Va. Code § 22C-9-4 (providing general qualifications and terms). The Director of the Department of Environmental Protection ("DEP") and the Chief of the DEP's Office of Oil and Gas are members of the Commission ex officio. The remaining members of the Commission are appointed by the Governor, with the advice and consent of the Senate. The members serve for defined terms and may only be removed for "incompetency, neglect of duty, gross immorality or malfeasance in office." W. Va. Code § 22C-9-4.

## *Summary of SB694 and the Broader Statutory Scheme*

Unitization refers to the pooling of separately owned mineral tracts in order to form a single operating unit overlaying all, or part of, a common source of oil and gas supply (e.g., a reservoir). Once a horizontal well unit has been created, an operator may develop the reservoir within the bounds of the unit but without regard to property lines of the pooled mineral tracts. A lessor that is a mineral tract owner, in such circumstances, would be entitled to a royalty based on a pro rata share of the production attributable to her mineral tract, regardless of whether production is from her mineral tract or another tract within the unit. In general, unitization promotes

the efficient production of a reservoir, maximizes the economic recovery for both operators and mineral owners, and reduces the footprint from surface operations.

Often, unitization is done voluntarily. That is, mineral owners agree to the benefits of the combined acreage and consent to an operator pooling and unitizing the acreage covered by their lease. At times, however, mineral owners may refuse to lease their mineral rights within a proposed unit. Or, in cases where the mineral rights are already leased, withhold consent for pooling and unitization. For example, under preexisting law, the owner of a 1-acre mineral tract could thwart development of a 640-acre unit notwithstanding consent from the owners of the remaining 639 mineral acres. In response, many producing states, including West Virginia, have enacted statutory or compulsory unitization laws, which allow under limited circumstances, the pooling and unitization of various non-consenting mineral interests.

Under SB694, an operator may apply to the Commission to establish a drilling unit and to pool the mineral interests within the proposed unit. W. Va. Code § 22C-9-7a(c)(1). Before filing an application, the applicant must satisfy three conditions: First, as to the royalty interest, the applicant must obtain consent to pool or unitize from certain royalty owners representing 75% or more of the net acreage proposed for the horizontal well unit. W. Va. Code § 22C-9-7a(c)(2)(A). Second, as to the operator interest, the applicant must obtain the right to develop the acreage from those royalty owners representing 55% or more of the net acreage for the horizontal well unit. W. Va. Code § 22C-9-7a(c)(2)(B). Third, as to each non-consenting royalty owner that is

4

known and locatable, the operator must have made "good faith offers" to consent or agree to development of the acreage and participation in the proposed horizontal well unit. W. Va. Code § 22C-9-7a(c)(2)(C).

In executing its powers, the Commission determines what constitutes a good faith offer and is otherwise charged with ensuring that the applicant has met the statutory requirements for seeking a horizontal well unit order. *See* W. Va. Code § 22C-9-7a(e). Before issuing a horizontal well unit order, the Commission must hold a hearing and provide notice of that hearing to all interested parties. W. Va. Code § 22C-9-7a(d)(2). At the hearing, objections to the unitization application will be heard. *See id*. If the operator meets all of the statutory requirements, the Commission must issue a horizontal well unit order, authorizing unitization of the tracts and the corresponding oil and gas interests proposed to be unitized for horizontal drilling. W. Va. Code § 22C-9-7a(c)(5).

Non-consenting mineral owners are not without compensation. Where there is a valid lease but no pooling and unitization provisions in that lease, the non-consenting royalty owner is entitled to a statutorily defined bonus and production royalty. W. Va. Code § 22C-9-7a(f)(6). Conversely, where there is no lease at all, the non-consenting mineral owners may elect one of three options: (i) surrender the oil and gas underlying the tract to the operator for a statutorily defined amount; (ii) accept unitization consideration, which essentially creates a lease with terms similar to those of other leases in the unit; or (iii) participate in the unit on a carried basis. W. Va. Code § 22C-9-7a(f)(7). For those non-consenting mineral owners who fail to

5

make an election shall, they shall be deemed to have elected the second option. *Id.* SB694 became effective June 7, 2022. Compl. ¶ 24.

The only places in Article 9, Chapter 22C that the Attorney General is even mentioned is where the Legislature has authorized the Commission to employ the Attorney General or Assistants Attorney General as its counsel. *See* W. Va. Code § 22C-9-11(c); *id.*, § 22C-9-10(d); *id.*, § 22C-9-12(d).

### *Plaintiffs' Claims*

In Counts I through III, Plaintiffs complain that SB694 violates the U.S. Constitution and the West Virginia Constitution—in particular, the Takings Clauses and the Due Process Clauses—by depriving non-consenting mineral owners in a given unit of their property without just compensation and without due process. Am. Compl. ¶¶ 25-53. In Count IV, Plaintiffs complain that SB694 violates Article I, Section 9 of the U.S. Constitution and Article 3, Section 4 of the West Virginia Constitution insofar as it is ex post facto law. *Id.* at ¶¶ 54-65. In Count V, Plaintiffs complain that SB694 runs afoul of federal antitrust laws. *Id.* at ¶¶ 66-80.

Among other things, Plaintiffs ask that SB694 be declared unconstitutional, and that the Attorney General be preliminarily and permanently enjoined from enforcing SB694. *Id.* at 24.

### **ARGUMENT**

This Court previously dismissed identical claims against the Governor. ECF No. 14. For those same reasons, the Attorney General must be dismissed—in particular, (A) the Eleventh Amendment affords him complete immunity and (B)

6

Plaintiffs are without standing to prosecute their claims against the Attorney General.

### A. Eleventh Amendment Immunity Bars Claims Against the Attorney General

In general, States may not be haled into federal court without their consent. *Va. Off. for Protection & Advocacy v. Stewart*, 563 U.S. 247, 258 (2011). But suits may sometimes be brought in federal court to enjoin a state officer from enforcing an unconstitutional act under *Ex parte Young*, 209 U.S. 123, 159–60 (1908). Critically, however, *Ex parte Young* authorizes suits only against officers with "some connection with the enforcement of the act." *Id.* at 157.

Here, the Attorney General is not an appropriate party to this lawsuit because the Attorney General does not possess a sufficient responsibility for the enforcement of the Act to afford Plaintiffs a remedy. To obtain injunctive relief against a state officer relative to a state statute, a plaintiff must show that a "special relation" exists between that State officer and the challenged statute. *Ex Parte Young*, 209 U.S. at 157. Absent this special relation, it is insufficient for a plaintiff to merely assert that a "general duty" to execute and enforce the laws of the State makes a State officer a proper defendant. *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001). Plaintiffs must show "a measure of proximity to and responsibility for the challenged state action," *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008), that results from "a specific statutory duty to enforce" the provisions of the statute, *McBurney v. Cuccinelli*, 616 F.3d 393, 400 (4th Cir. 2010).

7

In other words, because the purpose of the requested injunctive relief is to restrict the actions of the individual responsible for enforcing the challenged law, Plaintiffs' suit is only appropriate if it pursues such relief against the person(s) responsible for enforcing the statute. *See Kobe v. Haley*, 666 F. App'x 281, 299 (4th Cir. 2016); *Waste Mgmt. Holdings*, 252 F.3d at 331; *see also Doyle v. Hogan*, 1 F.4th 249, 256-57 (4th Cir. 2021) (holding that Maryland's attorney general and governor were not proper defendants as they "lack[ed] a sufficient connection" a state statute's enforcement "to satisfy *Ex Parte Young*").

No relationship, special or otherwise, exists between the Attorney General and the Act. In fact, the Attorney General is not mentioned and has no direct role in the statutory enforcement structure contained in Article 9, Chapter 22C. Plaintiff has failed to identify any provision of the Act—or the broader statutory scheme—that confers upon the Attorney General any enforcement authority. Indeed, Plaintiffs make only passing reference to the Attorney General in establishing compliance with Federal Rule of Civil Procedure 5.1. Plaintiffs seems to have named the Attorney General based exclusively on a mistaken reading of Rule 5.1, which requires only that the Attorney General be given *notice* of a constitutional challenge to state law. *See* Fed. R. Civ. P. 5.1.

When confronted with similar circumstances, the Fourth Circuit has found a governor was not a proper party. In *Waste Management Holdings*, the Fourth Circuit held that the Governor of Virginia was not an appropriate party to a lawsuit challenging the validity of Virginia's municipal solid waste regulations because the

8

statute at issue there vested sole authority to enforce the regulations with Virginia's Waste Management Board, not the governor. *See* 252 F.3d at 331-32. In fact, this Court recently cited *Waste Management Holdings*, as well as *South Carolina Wildlife Federation v. Limehouse*, in its ruling dismissing an action against the Attorney General. *See Young v. Morrisey*, 2021 WL 2433798, at *2 (S.D. W. Va. 2021) (citing 252 F.3d at 331; 549 F.3d at 332). Based on Magistrate Judge Tinsley's review of the relevant statutes, the Court concluded that "Patrick Morrisey does not have the specific authority to enforce the mask mandate as Attorney General of West Virginia" and was therefore immune from suit. *Id.* at *2. As with the Virginia statute discussed in *Waste Management Holdings* and the relevant authorities considered in *Young*, the Act here and Article 9, Chapter 22C generally vest no enforcement authority in the Attorney General. Therefore, the Act does not grant the Attorney General any "specific statutory duty to enforce" the requirements relative to oil and gas development. *McBurney*, 616 F.3d at 400.

Not only is the Amended Complaint silent as to the Attorney General's alleged enforcement role as to the Act, but Plaintiffs also do not even try to argue that the Attorney General has a general power to enforce all state laws in West Virginia necessary to support the claims here. Nor could it: A general duty is insufficient to render any such officer an appropriate defendant. In *Waste Management Holdings*, the Fourth Circuit rejected appellees' claim that the Governor of Virginia's public endorsement and defense of the statute, combined with his general duty to enforce state law, was sufficient to make him an appropriate party. 252 F.3d at 331. Rather,

the Circuit held that "[t]he mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute." *Id.* (quoting *Shell Oil Co. v. Noel*, 608 F. 2d 208, 211 (1st Cir. 1979)). Simply put, a "'[g]eneral authority to enforce the laws of the state' is an insufficient ground for abrogating Eleventh Amendment immunity." *S.C. Wildlife Fed'n*, 549 F.3d at 332 (quoting *Lytle v. Griffith*, 240 F.3d 404, 409 (4th Circ. 2001); alterations in original).

For these reasons, any injunction against the Attorney General would not afford the remedy Plaintiffs seek. In *Kobe v. Haley*, the Fourth Circuit held that imposing an injunction on the Governor of South Carolina would have no effect in curing alleged Medicaid violations because the state vested its Department of Health and Human Services with sole authority to administer Medicaid services. 666 F. App'x at 299. Similarly, any injunction imposed on the Attorney General would bear no curative or preventive benefits vis-à-vis the Act's alleged unconstitutionality. The Attorney General was not granted and, thus, does not possess authority to enforce the provisions of the Act, and "[t]he purpose of allowing suit against state officials to enjoin their enforcement of an unconstitutional statute is not aided by enjoining the actions of a state official not directly involved in enforcing the subject statute." *Waste Mgmt. Holdings*, 252 F.3d at 331.

### B. *Plaintiffs Lack Article III Standing*

If the Court concludes that the Attorney General may be sued under *Ex Parte Young*, Plaintiffs' claims against him must still be dismissed because they lack

10

standing to pursue them. To establish Article III standing, Plaintiffs must plausibly allege that they have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 30, 338 (2016). Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing these elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In dismissing Plaintiffs' original complaint, this Court found that "plaintiffs have failed to satisfy either of the three requirements for Article III standing." ECF No. 14, at 5. The Amended Complaint fails to cure the standing deficiencies, so it must suffer a similar fate.

*First,* Plaintiffs have failed to demonstrate injury-in-fact. To establish injury-in-fact, Plaintiffs must show that they suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (cleaned up). While "imminence is concededly a somewhat elastic concept," a "threatened injury must be certainly impending to constitute injury in fact," and "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up).

Plaintiffs have not identified any *actual* injury sustained as a result of SB694. Nor have Plaintiffs identified any *impending* injury sufficient to confer standing.

11

Though Plaintiffs allege that they own various mineral tracts in the State, they do not allege that the provisions of SB694 have been enforced against them or that such enforcement is imminent. For example, Plaintiffs *do not* allege that the Commission has unitized their mineral tracts into a horizontal well unit—much less that an operator has applied to unitize their mineral tracts. All told—and according to their own pleading—Plaintiffs appear to be totally unaffected by SB694. Absent allegations of a concrete and particularized injury—or, at a minimum, allegations of an impending injury or substantial risk of harm—Plaintiff's claims must be dismissed for lack of Article III standing.

*Second*, Plaintiffs have not plausibly alleged that their injury, if any, is fairly traceable to the Attorney General. To establish standing, "a plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Disability Rts.*, 24 F.4th at 901. "When a defendant has no role in enforcing the law at issue, it follows that the plaintiff's injury allegedly caused by that law is not traceable to the defendant." *Id*. For the same reason that the Attorney General is entitled to Eleventh Amendment immunity, Plaintiffs' supposed injuries are not fairly traceable to the Attorney General. *See id*. (providing that the *Ex parte Young* principles apply with equal force in the standing context).

*Third*, Plaintiffs have not demonstrated that their injury, if any, would be redressed by a favorable ruling against the Attorney General. Because he has no authority to enforce SB694, an order enjoining the Attorney General's enforcement of

SB694 would serve no practical purpose. Plaintiffs' claims against the Attorney General must therefore be dismissed for lack of Article III standing.

## CONCLUSION

For these reasons, the Attorney General has Eleventh Amendment immunity and should therefore be dismissed. However, even if the Attorney General is found to be a proper party, Plaintiffs' claims against the Attorney General should be dismissed for lack of standing.

> **PATRICK MORRISEY, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF WEST VIRGINIA,**
>
> By Counsel:
>
> /s/ Andrew C. Robey
> Michael B. Hissam (WVSB #11526)
> J. Zak Ritchie (WVSB #11705)
> Andrew C. Robey (WVSB #12806)
> HISSAM FORMAN DONOVAN RITCHIE PLLC
> P.O. Box 3983
> Charleston, WV 25339
> t: 681-265-3802
> f: 304-982-8056
> mhissam@hfdrlaw.com
> zritchie@hfdrlaw.com
> arobey@hfdrlaw.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on November 2, 2022, he electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of that filing to counsel of record.

/s/ *Andrew C. Robey*
Andrew C. Robey (WVSB #12806)