IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling Division

SCOTT SONDA and BRIAN CORWIN,

      Plaintiffs,

v.                                       Civil Action No. 5:22-cv-124

WEST VIRGINIA OIL & GAS
COMMISSION, *et al.*

      Defendants.

**DEFENDANTS WEST VIRGINIA OIL & GAS CONSERVATION COMMISSION, RANDALL M. ALBERT, ROBERT S. RADABAUGH, MICHAEL MCCOWN, JAMES A. MARTIN, AND HAROLD WARD'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

Plaintiffs purport to challenge the constitutionality of several provisions of the West Virginia Code as enacted by Senate Bill 694 ("SB694), which generally empowers the Commission to unitize adjoining mineral tracts for the drilling and production of oil and gas. But Plaintiffs fail to explain how—if at all—they have been concretely harmed by SB694. For example, Plaintiffs do not plausibly allege that the Commission has unitized their mineral tracts under SB694, much less that anyone has applied to unitize their mineral tracts under the new statutory scheme. Indeed, Plaintiffs appear to be totally unaffected by SB694's implementation. This Court previously dismissed the Complaint for failure to identify any actual or impending injury sufficient to confer Article III standing. Because the Amended Complaint fails to cure the persisting issue of standing, it should suffer a similar fate. It is well-established that federal courts may not render advisory opinions, regardless of how

1

fervently Plaintiffs may want one. But even if Plaintiffs somehow satisfy their burden to show standing, the Eleventh Amendment and antitrust law's state action doctrine clearly bar Plaintiffs' claims as a matter of law.

For these reasons, Defendants the West Virginia Oil & Gas Conservation Commission, Randall M. Albert, Robert S. Radabaugh, Michael McCown, James A. Martin, and Harold Ward move to dismiss the Amended Complaint in its entirety.

## OPERATIVE FACTS

Plaintiffs challenge as unconstitutional SB694, which adds and amends various sections of Article 9, Chapter 22C, all relating generally to oil and gas development.[1] Prior to the enactment of SB694, the Commission was empowered to unitize two or more mineral tracts for drilling and production of deep well formations. *See* W. Va. Code § 22C-9-7. Relevant here, SB694 creates a new mechanism by which the Commission may unitize two or more mineral tracts—whether deep or shallow formations—for horizontal drilling and production. *See* W. Va. Code § 22C-9-7a.

### *The Commission*

The Commission is granted exclusive authority to enforce the provisions of Article 9, Chapter 22C, which is the subject of Plaintiffs' constitutional challenge. *See* W. Va. Code § 22C-9-4(e). Among other responsibilities, the Commission is charged with regulating the spacing of oil and gas wells; holding hearings and issuing

---

[1] The engrossed version of SB694, which includes tracked changes to existing law, can be accessed at:

https://www.wvlegislature.gov/Bill_Text_HTML/2022_SESSIONS/RS/bills/SB694%20SUB1%20eng.pdf

2

horizontal well unit orders; and proposing and enforcing legislative rules to prevent waste and protect the correlative rights of operators, surface owners, and mineral owners. *See* W. Va. Code § 22C-9-4(f).

*Summary of SB694 and the Broader Statutory Scheme*

Unitization refers to the pooling of separately owned mineral tracts in order to form a single operating unit overlaying all, or part of, a common source of oil and gas supply (e.g., a reservoir). Once a horizontal well unit has been created, an operator may develop the reservoir within the bounds of the unit but without regard to property lines of the pooled mineral tracts. A lessor that is a mineral tract owner, in such circumstances, would be entitled to a royalty based on a pro rata share of the production attributable to her mineral tract, regardless of whether production is from her mineral tract or another tract within the unit. In general, unitization promotes the efficient production of a reservoir, maximizes the economic recovery for both operators and mineral owners, and reduces the footprint from surface operations.

Often, unitization is done voluntarily. That is, mineral owners agree to the benefits of the combined acreage and consent to an operator pooling and unitizing the acreage covered by their lease. At times, however, mineral owners may refuse to lease their mineral rights within a proposed unit. Or, in cases where the mineral rights are already leased, withhold consent for pooling and unitization. For example, under preexisting law, the owner of a 1-acre mineral tract could thwart development of a 640-acre unit notwithstanding consent from the owners of the remaining 639 mineral acres. In response, many producing states, including West Virginia, have

3

enacted statutory or compulsory unitization laws, which allow under limited circumstances, the pooling and unitization of various non-consenting mineral interests.

Under SB694, an operator may apply to the Commission to establish a drilling unit and to pool the mineral interests within the proposed unit. W. Va. Code § 22C-9-7a(c)(1). Before filing an application, the applicant must satisfy three conditions: First, as to the royalty interest, the applicant must obtain consent to pool or unitize from certain royalty owners representing 75% or more of the net acreage proposed for the horizontal well unit. W. Va. Code § 22C-9-7a(c)(2)(A). Second, as to the operator interest, the applicant must obtain the right to develop the acreage from those royalty owners representing 55% or more of the net acreage for the horizontal well unit. W. Va. Code § 22C-9-7a(c)(2)(B). Third, as to each non-consenting royalty owner that is known and locatable, the operator must have made "good faith offers" to consent or agree to development of the acreage and participation in the proposed horizontal well unit. W. Va. Code § 22C-9-7a(c)(2)(C).

In executing its powers, the Commission determines what constitutes a good faith offer and is otherwise charged with ensuring that the applicant has met the statutory requirements for seeking a horizontal well unit order. *See* W. Va. Code § 22C-9-7a(e). Before issuing a horizontal well unit order, the Commission must hold a hearing and provide notice of that hearing to all interested parties. W. Va. Code § 22C-9-7a(d)(2). At the hearing, objections to the unitization application will be heard. *See id*. If the operator meets all of the statutory requirements, the Commission must

4

issue a horizontal well unit order, authorizing unitization of the tracts and the corresponding oil and gas interests proposed to be unitized for horizontal drilling. W. Va. Code § 22C-9-7a(c)(5).

Non-consenting mineral owners are not without compensation. Where there is a valid lease but no pooling and unitization provisions in that lease, the non-consenting royalty owner is entitled to a statutorily defined bonus and production royalty. W. Va. Code § 22C-9-7a(f)(6). Conversely, where there is no lease at all, the non-consenting mineral owners may elect one of three options: (i) surrender the oil and gas underlying the tract to the operator for a statutorily defined amount; (ii) accept unitization consideration, which essentially creates a lease with terms similar to those of other leases in the unit; or (iii) participate in the unit on a carried basis. W. Va. Code § 22C-9-7a(f)(7). For those non-consenting mineral owners who fail to make an election shall, they shall be deemed to have elected the second option. *Id*.

SB694 became effective June 7, 2022. Am. Compl. ¶ 24.

*Plaintiffs' Claims*

In Counts I through III, Plaintiffs complain that SB694 violates the U.S. Constitution and the West Virginia Constitution—in particular, the Takings Clauses and the Due Process Clauses—by depriving non-consenting mineral owners in a given unit of their property without just compensation and without due process. Am. Compl. ¶¶ 25-53. In Count IV, Plaintiffs complain that SB694 violates Article I, Section 9 of the U.S. Constitution and Article 3, Section 4 of the West Virginia

5

Constitution insofar as it is ex post facto law. *Id*. at ¶¶ 54-65. In Count V, Plaintiffs complain that SB694 runs afoul of federal antitrust laws. *Id*. at ¶¶ 66-80.

Among other things, Plaintiffs ask that SB694 be declared unconstitutional, and that the Commission be preliminarily and permanently enjoined from enforcing SB694. *Id*. at p.24.

## ARGUMENT

Because Plaintiffs are without standing to challenge SB694, the Amended Complaint must be dismissed in its entirety. *See* Fed. R. Civ. P. 12(b)(1). At a minimum, because state law claims against state officials are not cognizable in federal court, Counts III and IV must be dismissed insofar as they allege violations of the West Virginia Constitution. And because state legislative acts are categorically exempt from federal antitrust laws, Count V must be dismissed for failure to state a claim.

### A. Plaintiffs Still Lack Standing.

Plaintiffs have not identified any *actual* injury sustained as a result of SB694. Nor have Plaintiffs identified any *certainly impending* injury sufficient to confer standing. Plaintiffs challenge SB694 insofar as it permits, under limited circumstances, compulsory unitization of non-consenting mineral owners. But there is no indication that the provisions of SB694 have been applied to Plaintiffs' property or that such application is imminent. For example, Plaintiffs do not allege that the Commission has unitized their mineral tracts into a horizontal well unit—much less that an operator has applied to unitize their mineral tracts. Though Plaintiffs claim

6

to own mineral interests in the Larry Ball North Unit and the Samuel Jones BRK Unit, Plaintiffs do not even state whether these units were created before or after SB694's implementation.

Nor have Plaintiffs stated whether these units were created voluntarily under the terms of their leases or involuntarily under Article 9, Chapter 22C. If created involuntarily under Article 9, Chapter 22C, it remains unclear whether the units were created under § 22C-9-7 (unaffected by SB694, and not subject of challenge) or § 22C-9-7a (created by SB694, and subject of challenge). Without this baseline information, it is impossible to determine whether Plaintiffs *might* have standing to challenge SB694. Absent allegations of a concrete and particularized injury—or, at a minimum, allegations of an impending injury or substantial risk of harm— Plaintiffs' claims must be dismissed for lack of Article III standing.

### B. The Eleventh Amendment Bars All Claims Against the Commission.

Even if Plaintiffs had standing, they cannot sue the Commission as a standalone agency of the State in federal court. As a general rule, the Eleventh Amendment grants sovereign immunity to states from suits brought by private citizens in federal court. Specifically, the Eleventh Amendment prohibits "any suit . . . . against one of the United States by citizens of another State." U.S. Const. Amend. XI. As interpreted, this provision also provides immunity to state agencies, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). It cannot be disputed that the Commission as an entity is an agency of the State of West Virginia. Because Congress did not abrogate the Eleventh Amendment immunity of the states

7

when it enacted 42 U.S.C. § 1983 or the Sherman Antitrust Act, and because the Commission did not consent to this suit, the Commission is immune. *See Sarkissian v. W. Virginia Univ. Bd. of Governors*, No. CIV.A. 1:05CV144, 2007 WL 1308978, at *3–4 (N.D. W. Va. May 3, 2007). All claims against the Commission as an agency of the state must be dismissed.

    **C.**    **The Eleventh Amendment Bars Plaintiffs' State Law Claims Against the Individual Commissioners.**

In Counts III and IV of the Amended Complaint, Plaintiffs allege violations of the West Virginia Constitution. Am. Compl. ¶¶ 43-65. State law claims against state officials, however, are not cognizable in federal court and must therefore be dismissed. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984) (providing that sovereign immunity under the Eleventh Amendment bars federal courts from enjoining violations of state law by state actors); *Bragg v. W. Virginia Coal Ass'n*, 248 F.3d 275, 293 (4th Cir. 2001) (providing that sovereign immunity bars a federal court from granting any type of relief, whether retrospective or prospective, based upon a state official's purported violation of state law). Because this Court cannot entertain state law claims against state officials, Count III and Count IV (to the extent they alleged state constitutional violations) must be dismissed. *See* Fed. R. Civ. P. 12(b)(1).

    **D.**    **The State Action Doctrine Bars Plaintiffs' Antitrust Claim.**

In Count V of the Amended Complaint, Plaintiffs attempt to allege violations of federal antitrust laws—in particular, the Sherman Antitrust Act, 15 U.S.C. §§ 1, *et seq*. However, Defendants—each of whom are state officers (sued in their official

8

capacities) or state entities—are categorically exempt from federal antitrust laws under the "state action" doctrine. Under the doctrine, antitrust laws do "not apply to anticompetitive restraints imposed by the States as an act of government." *W. Star Hosp. Auth. Inc. v. City of Richmond, Virginia*, 986 F.3d 354, 358 (4th Cir. 2021) (quoting *Parker v. Brown*, 317 U.S. 341, 352 (1943)); *N. Carolina State Bd. of Dental Examiners v. F.T.C.*, 574 U.S. 494, 504 (2015) (providing that state legislation, considered an exercise of a state's sovereign power, is immune from antitrust scrutiny); *Diverse Power, Inc. v. City of LaGrange, Ga.*, 934 F.3d 1270, 1273 (11th Cir. 2019) ("The doctrine of state-action immunity insulates states from suit under the federal antitrust laws").

Here, Plaintiffs complain that SB694 is anticompetitive and runs afoul of federal antitrust laws. However, given that Defendants are state actors carrying out state law, the Commission and the Commissioners are also immune from federal antitrust claims. As such, Count V of the Amended Complaint must be dismissed. *See* Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

### E. Plaintiffs fail to state a claim in Counts I, II, and IV.

Plaintiff fails to state a claim for relief in Count I under the Takings Clause of the Fifth Amendment, for several reasons. *First*, under Fourth Circuit precedent, "the Eleventh Amendment bars Fifth Amendment taking claims against States in federal court when the State's courts remain open to adjudicate such claims." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 552 (4th Cir. 2014). And as the Fourth Circuit has previously explained, West Virginia courts are open to such claims. *See Henry v. Jefferson Cnty.*

9

*Plan. Comm'n*, 34 F. App'x 92, 96 (4th Cir. 2002); *see also Henry v. Jefferson Cnty. Comm'n*, No. 3:06-CV-33, 2009 WL 10709698, at *12 (N.D. W. Va. Apr. 14, 2009). Here, the Commissioners are sued in their official capacities and, as such, the claims against them are considered as being levied against the State (again, the Commission itself is indisputably an arm of the State). Consequently, sovereign immunity bars Plaintiffs' takings claim because "the state courts remain open to adjudicating the claim." *Zito v. N. Carolina Coastal Res. Comm'n*, 8 F.4th 281, 288 (4th Cir. 2021).

*Second*, even if sovereign immunity is no bar, Plaintiffs fail entirely to allege what property of theirs has been taken. *See, e.g.*, Am. Compl. § 32 (alleging only that "SB 694 . . . *encourages* a taking. . . .") (emphasis added). In short, there has been no taking in the first place that is necessary to trigger claim for compensation. Plaintiff has otherwise failed to plead the required factual and legal elements of a federal Takings Clause claim. Count I thus fails to state a claim, much less a plausible one.

Plaintiff fails to state a claim for relief in Count II under the Due Process Clause of the Fourteenth Amendment. "In order to make out either a substantive or procedural due process claim, a plaintiff must allege sufficient facts to support a finding that the [plaintiff was] deprived of life, liberty, or property, by governmental action." *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 109 (4th Cir.2011) (quotation marks omitted). "A protected property interest cannot be created by the Fourteenth Amendment itself, but rather must be created or defined by an independent source." *Id.* (citations omitted). Regarding the definition of a property interest, courts have explained: "To have a property interest in a benefit, a person

clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Mallette v. Arlington Cnty. Emps.' Supplemental Ret. Sys. II*, 91 F.3d 630, 634 (4th Cir.1996) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

Here, Plaintiffs wholly fail to allege the legal and factual elements of a Fourteenth Amendment due process claim under existing law. They fail to allege that they possess a legitimate property interest, including as defined by state law. Worse still, Plaintiffs fail entirely to explain that they are or are virtually certain to be deprived of any such property interest by government action (the Commissioners). Rather, Plaintiffs simply allege an abstract disagreement with the detailed administrative adjudicatory structure enacted by SB694. *See* Am. Compl. ¶¶ 37-42. That, however, is not a basis for a federal due process cause of action against state officials. It must therefore be dismissed.

Plaintiff fails to state a claim for relief in Count IV under the *federal* Ex Post Facto Clause for the simple reason that it applies only to statutes imposing criminal penalties. *See Collins v. Youngblood*, 497 U.S. 37, 41 (1990) ("[I]t has long been recognized by this Court that the constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them.") (citing cases). And for reasons already explained in Section C above, state law claims (such as under the analogous state constitution ex post facto clause) against state officials may not be heard in federal court. *See Pennhurst State School & Hosp. v.*

11

*Halderman*, 465 U.S. 89, 117 (1984). Therefore, however construed, Count IV fails as a matter of law.

## CONCLUSION

Because Plaintiffs lack standing to challenge SB694, the Amended Complaint must be dismissed in its entirety. Even if this Court found that Plaintiffs had standing, their claims are barred by the Eleventh Amendment and the state action doctrine, and otherwise fail to state a claim as a matter of law.

**WEST VIRGINIA OIL & GAS CONSERVATION COMMISSION; RANDALL M. ALBERT; ROBERT S. RADABAUGH; MICHAEL MCCOWN; JAMES A. MARTIN; and HAROLD WARD, in their official capacities,**

By Counsel:

/s/ Andrew C. Robey
Michael B. Hissam (WVSB #11526)
J. Zak Ritchie (WVSB #11705)
Andrew C. Robey (WVSB #12806)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
t: 681-265-3802
f: 304-982-8056
mhissam@hfdrlaw.com
zritchie@hfdrlaw.com
arobey@hfdrlaw.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on November 2, 2022, he electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of that filing to counsel of record.

              /s/ *Andrew C. Robey*
              Andrew C. Robey (WVSB #12806)